PEOPLE, PLAINTIFF AND APPELLEE, *v.* RODRÍGUEZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Aguadilla in a Prosecution for Practicing Medicine Unlawfully.

No. 2276.—Decided December 19, 1924.

PHYSICIANS—UNLAWFUL PRACTICE OF MEDICINE—EVIDENCE.—A defendant who proves that he was not a mere quack or impostor, but a man with some ambition and a genuine interest in the study of medicine who had practiced the profession in Porto Rico since 1904, enjoying the confidence of his pa-

tients and colleagues and of the community in which he lived, is included among those authorized to practice by the proviso of the Act of March 9, 1911, and can not be convicted of unlawfully practicing medicine in April, May and June of 1923.

The facts are stated in the opinion.

*Mr. F. Cervoni Gely* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The information herein charges that during the months of April, May and June of 1923 the defendant "wilfully, unlawfully and maliciously, with the intent of usurping the functions of licensed physicians in Porto Rico, and knowingly, practiced the profession of physician and **surgeon,** appending to his name the letters M. D. (Doctor of Medicine), publicly advertising himself as a physician and prescribing drugs and medicines for the use of human beings, although his name had not been registered in the books of the Board of Medical Examiners of Porto Rico, or in the Register of Physicians and Surgeons of the Department of Health of Porto Rico."

In discussing the third assignment of error, that is, that the judgment is contrary to the facts proved and to the law, the *Fiscal* says:

"Judging from the evidence as well as from appellant's brief, it seems to have been a matter of discussion in the court below whether the defendant had practiced medicine more than five years prior to 1911, which the district attorney seems to have attempted to prove, while the defendant attempted to prove that he had practiced the profession uninterruptedly since 1904, and it seems that the court below, the district attorney and counsel for defendant ascribed great importance to that question, in order to determine, no doubt, whether the violation of the law came under Act No. 79 of March 9, 1911, or under Act No. 73 of July 30, 1923.

"In our opinion this distinction sought to be made between the Acts has no importance, because the charge contained in the information comes fully within either of them.

"Act No. 79 of 1911 prescribes the manner in which the Board of Medical Examiners shall issue the certificates or licenses for the

practice of medicine and surgery in Porto Rico, and requires that physicians duly graduated as such shall pass an examination before a license is issued to them; but the same Act contains at the end a proviso which reads as follows:

" 'That all physicians, osteopathic physicians and surgeons who hold certificates granted by the now existing Board of Medical Examiners shall be exempt from the provisions of this section. And that all those who have been practicing in Porto Rico any of these branches for a period of five years prior to the approval of this Act shall be entitled to continue in the practice of their profession without being subject to the provisions hereinbefore stated.'

"The defendant-appellant admitted that he practiced the profession of physician since the year 1904 and claimed that having practiced much longer than five years before the said act was passed in 1911, he was exempt from passing the examination provided for by the said act and, therefore, could practice the profession.

"But the fact is that the proviso which we have cited above can not be construed in the manner sought by appellant, for although it really provides that everybody who has practiced the profession of physician in Porto Rico for five years prior shall be exempt from passing the examination required by the Board of Medical Examiners, it would be necessary to prove as a requisite *sine qua non* that the defendant was such physician and surgeon, that is, that he had been graduated from an accredited or lawfully organized medical college or institution, as expressed in the same act for the purposes of the admission to examination of candidates to practice the medical profession; but it is not possible to construe the said proviso as meaning that any person not a physician, by the mere fact of his having practiced for five years prior to the Act of 1911, may practice the profession of physician, for it is an essential requisite that the person be a graduated physician and surgeon with a diploma from an accredited university.

"Otherwise a shoemaker, for example, who might have acted as a quack doctor and prescribed for five years prior to the passing of the said act, could show that he was a physician by the mere fact of his having practiced the medical profession for five years, and this can not be the purpose of the Act of 1911 cited.

"As to the Act of 1923, we will cite that section thereof which is pertinent to the present case as follows:

" 'Every person practicing medicine or surgery or any branch thereof, or obstetrics in the Island, in violation of the provisions of this Act, for each infraction shall be guilty of misdemeanor and

upon conviction thereof shall be punished by a fine not to exceed five hundred (500) dollars nor less than fifty (50) dollars, or by confinement in jail for a term of from thirty (30) to ninety (90) days, or by both penalties in the discretion of the court. For the purposes of this Act every person shall be considered as practicing the profession who adds to his name the letters M. D. (Doctor of Medicine) or who publicly advertises himself as a physician or surgeon and who knowingly and with the intention of usurping the functions of authorized physicians prescribes, formulates or orders for the use of any person, any drug, medicine, water, mixture, beverage, mechanism, apparatus or other means, whether or not material, for the cure, relief and mitigation of any moral or physical ailment or disease or for the cure or relief of any wound, fracture, or bodily injury or other disease or who directly or indirectly receives compensation for such services.'

''We do not think, therefore, that any error has been committed in the prosecution of this cause, for which reason we are of the opinion that the judgment appealed from should be affirmed.''

In so far as the interpretation of the law of 1911 is concerned, appellant relies upon what purports to be a carefully considered opinion prepared by the Attorney General of Porto Rico in response to a request from the Governor, 3 Opinions of the Attorney General, 461, from which we take the following extract:

''One who has an established practice as a physician or surgeon is not *ipso facto* exempt from complying with subsequent legislation requiring him to conform to a reasonable standard respecting qualifications. Medical laws, however, quite frequently exempt from their operation those who have practiced in the States for a prescribed time previous to the passage thereof, and such provision is not unconstitutional on the ground of discrimination; but this exemption has been held to apply only to those whose previous practice was lawful.

''Now, the question arises: 'What effect do the words, ''and that all those who have been practicing in Porto Rico any of these branches for a period of five years prior to the approval of this act shall be entitled to continue in the practice of their profession without being subject to the provisions hereinbefore stated,'' incorporated in the act of March 9, 1911, have on the act of 1903?'

''Section 3 of the act approved March 9, 1911, as amended,

provides that a person desiring to practise medicine or surgery, or any of its branches, as well as osteopathy, etc., should apply to the Board for a certificate or license to do so. It also provides for an examination of the applicant by the Board, the production of diplomas, etc., and that after examination the Board shall, if the candidate has been found qualified, grant a certificate or license to practise medicine and surgery, or any of its branches. This section further provides that all persons who have been practising in any of these branches in Porto Rico for a period of five years prior to the approval of this act shall be entitled to *continue* in the practice of their profession without being subject to the provisions *hereinbefore stated.*

"After a most careful consideration of this matter, and a desire on my part to give this section a construction which would be in harmony and accord with the policy heretofore adopted in Porto Rico, of requiring all applicants to be examined by, and secure a license or certificate from, the Board of Medical Examiners, I come, regretfully, to the conclusion that the words used are too plain to admit of but one construction—and that is, that the Legislature intended to license directly all persons who had practised medicine, surgery, osteopathy, or any of the branches of medicine, surgery, or osteopathy for five years prior to the passage of the act of March 9, 1911, without submitting to examination by, securing a certificate or license from, the Board of Medical Examiners.

"Of course it is well understood that the Legislature has a right to regulate the practice of medicine and surgery, and that it is empowered to do so directly, or that it may constitute commissions, committees or boards for this purpose. Now, it has constituted a board to pass on the qualifications of applicants to practise medicine, surgery, etc., and this was the law for a number of years. In 1911 it amended the law so as to provide unmistakably that any one having practised medicine, surgery, etc., in Porto Rico for five years prior to the passage of the act of 1911 should be entitled to continue such practice.

"This amendment contained in the act of 1911 presents a very anomalous condition of affairs: For instance, here is a man who for five years has practised medicine and surgery in violation of the law, against the protest of the Board of Medical Examiners, and the Legislature, by the act of March 9, 1911, authorizes that man to continue the practice of his profession in Porto Rico. It is the law of the land, however, and is too plain to admit of argument. The man without any license from the Board of Medical

Examiners, who claims this right under the act of 1911, may very often find himself in an embarrassed position. He does not know when he may be subject to the penalties of the law, and may be liable to arrest at any time because he has no certificate or license from the Board showing that he has, in fact, been practising his profession in Porto Rico for five years prior to the passage of the act of 1911; the Board is not authorized to give him such certificate or license, and whatever he does is done at his own risk under this law.

"I regret to say that I feel constrained to advise you, therefore, that the Legislature made a very material change in the act of 1903, concerning the licensing of persons to practise medicine, surgery, etc., in the Island of Porto Rico, by its act of March 9, 1911, and that under the amendment contained in this latter act any person having practised medicine, surgery, or any of its branches for five years prior to the passage of the act of 1911 is authorized to continue such practice without securing a certificate or license from the Board of Medical Examiners,—in fact, that the Board cannot issue a certificate or license to such an applicant, nor is he entitled to such certificate or license."

This opinion is. cited and quoted at some length in the brief for appellant and can hardly be ignored.

While such a ruling of course is not binding upon this court beyond the persuasive force of its logic and whatever respect may be due to the professional prestige and standing as well as the official position of its author, yet it seems plausible enough on its face and is subscribed by a distinguished lawyer of long experience and recognized ability, whose deliberate judgment upon a question of statutory construction can not be brushed aside by the bald assertions contained in the brief for the Government herein.

Moreover, it seems to have stood for more than a decade without modification or reversal by any of the successive heads of the department for which he speaks.

In the circumstances, we are not disposed of our own initiative and at this time to challenge the soundness of a conclusion reached with such manifest reluctance and ap-

parently after mature consideration by the Insular Department of Justice.

And in so far as the law of 1923 is concerned it will suffice to say that the Act defining a crime and approved on July 30, 1923, to take effect on November 1, 1923, can not be successfully invoked as governing an offense alleged in an information dated October 20, 1923, to have been committed in April, May and June of that year.

The trial judge, however, seems to have relied upon an amendment of 1919, laws of that year, page 194, very much as the *fiscal* pins his faith to the law of 1923.

The proviso in question as amended in 1919 reads thus:

". . . . That all physicians, osteopathic physicians and surgeons who hold certificates granted by the present board of medical examiners shall be exempt from the provisions of this rule; and that all duly authorized physicians practicing in Porto Rico for a period of five years prior to the approval of this Act, may continue to practice their profession without being subject to the foregoing provisions."

But if appellant was directly licensed by the Legislature in 1911, he was as "duly authorized" to practice medicine as was any graduate of an accredited university who had submitted to an examination by and received a certificate from the board of medical examiners. The most that can be said of the amendment of 1919 is that perhaps it might be construed so as to require a defendant in the position occupied by appellant to prove a double period of actual practice,—that is to say, five years prior to 1911 and another five years prior to 1919. But, even so, defendant herein, by chance rather than by design it may be, has met that requirement. Whatever doubt that might have existed as to the sufficiency of the evidence in this regard was removed by the admissions elicited from the defendant on cross-examination by the *fiscal* to the effect that in certain cases tried shortly before the filing of the information herein defendant, in qualifying as an expert for the prose-

cution, had stated under oath that he had been engaged in the practice of his profession in Porto Rico for a period of ten years.

This admission is also mentioned by the trial judge in an opinion rendered at the time of pronouncing sentence as the only ground upon which the testimony for the defense was rejected. Not only is there no very apparent inconsistency between this admission and the evidence as to continuous practice from 1904 to 1911, but the explanation given by defendant is most reasonable and satisfactory. It is that in order to qualify as an expert he was not called upon to state with absolute accuracy the full period of his experience and that what he had in mind was the second period of practice entered upon when defendant resumed the practice of his profession in 1913 or 1914, upon his return to the Island after an absence of two years during which he had pursued his studies in the University of Nebraska.

Perhaps, if the testimony of the defendant in his own behalf was the only evidence adduced in his defense at the trial, we might hesitate to reverse the judgment appealed from.

But any doubt that might arise from that discrepancy, if it be a discrepancy, is at once removed by the testimony of other witnesses who seem to be reputable and whose veracity has not been impeached in any way, either on cross-examination or by evidence in rebuttal.

One of these witnesses is a man who acted first as justice of the peace and later as mayor of the town where the defendant practiced. Afterwards he also served as marshal of the municipal court in an adjoining municipality. He states that the defendant was his family physician and frequently acted as town physician during the absence of the incumbent to the entire satisfaction of the local authorities and of the public in general.

Another one of these witnesses, a physician 60 years old with more than 30 years of experience at the time of

the trial, a man whose professional reputation was not questioned in the court below, who knew the defendant in 1904 and afterwards was called by him for consultation on several occasions, seems to have been favorably impressed by defendant's clinical knowledge and by his skill as a practitioner.

The evidence as a whole indicates that defendant was not a mere quack or impostor without professional attainments during the first few years of his practice, but a man with some ambition and a genuine interest in the study of medicine, who had an established practice and enjoyed the confidence and esteem of his patients, of his brother physicians and of the community in which he lived. Prior to the present prosecution he had never been disturbed in the practice of his chosen profession, notwithstanding the fact that certain members of the board of medical examiners were well aware of his activities. All things considered, he seems to have been, even before attending the University of Nebraska, what Abraham Lincoln might have called, if tradition be true, "a pretty good mast-fed" physician.

We need not hold, therefore, and would not be understood as holding at this time that the trial judge in a case of this kind has no discretion in determining the question as to what amounts under the meaning of the proviso of 1911 to "practicing in Porto Rico" any of the branches there enumerated. Of course a shoemaker or blacksmith, who recommends some favorite formula or diagnoses the case of a sick friend and prescribes a remedy with or without remuneration for such services, would not come under the proviso.

The judgment appealed from must be

*Reversed.*

Chief Justice Del Toro and Justices Wolf and Franco Soto concurred.

Mr. Justice Aldrey dissented.